39 F.3d 374
 309 U.S.App.D.C. 97
 In the Matter of a CHARGE OF JUDICIAL MISCONDUCT OR DISABILITY.
 Judicial Council Complaint Nos. 94-8, 94-9 and 94-10.
 
 Judicial Council for the District of Columbia Circuit.
 Nov. 1, 1994.
 Before: EDWARDS, Chief Judge of the Circuit.
 ORDER
 Upon consideration of the complaints herein, filed against a judge of the United States Court of Appeals for the District of Columbia Circuit pursuant to the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 and the Rules of the Judicial Council for the District of Columbia Circuit Governing Complaints of Judicial Misconduct or Disability, it is
 ORDERED, for the reasons stated in the attached Opinion, that the complaints be dismissed as not in conformity with 28 U.S.C. Sec. 372(c)(1) (Supp. V 1993). Complainants have failed to allege that the subject judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts.
 The Clerk is directed to send copies of this Order and accompanying Opinion to complainants and to the subject judge. See 28 U.S.C. Sec. 372(c)(3) (1988).
 EDWARDS, Chief Judge:
 
 
 1
 This matter involves three complaints of judicial misconduct, arising pursuant to the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 ("the Judicial Councils Act"). A principal premise of the Judicial Councils Act is that federal circuit, district, bankruptcy, and magistrate judges will not.
 
 
 2
 engage[ ] in conduct prejudicial to the effective and expeditious administration of the business of the courts.
 
 
 3
 28 U.S.C. Sec. 372(c)(1) (Supp. V 1993). "Any person" who has reason to believe that a judge has engaged in such conduct, may file a written complaint, along with a brief statement of the facts constituting such conduct, with the clerk of the court of appeals. Id. The matter is then referred to the Chief Judge of the Circuit, who, by written order, may dismiss the complaint if it is (i) not in conformity with section 372(c)(1), (ii) directly related to the merits of a decision or procedural ruling, or (iii) frivolous. See 28 U.S.C. Sec. 372(c)(3)(A) (1988); D.C.CIR.JUD.MISCONDUCT R. 4(c)(1).
 
 
 4
 The instant complaints involve charges against a circuit judge, who also serves as a member of the Court of Appeals "Division to Appoint Independent Counsels" ("the Special Division"). See 28 U.S.C. Sec. 49 (1988). The complainants allege that the accused judge engaged in misconduct when he had ex parte communications with two United States Senators at a time when the Special Division was considering the appointment of an independent counsel to investigate the so-called "Whitewater" affair. Implicit in the complaints is the suggestion that the Senators may have improperly influenced the judge in his selection of an independent counsel. The complainants also charge that the judge improperly failed to disclose correspondence from other members of Congress regarding this matter. Finally, the complainants assert that, without regard to whether the judge was actually influenced, the judge's conduct resulted in an appearance of impropriety that was "prejudicial to the effective and expeditious administration of the business of the courts." These complaints are misguided in their assumptions about the applicable legal and ethical principles at issue.
 
 
 5
 When acting to appoint an independent counsel, a member of the Special Division draws authority not from Article III of the United States Constitution (which defines the "judicial Power of the United States"), but from the Appointments Clause of Article II, Section 2:
 
 
 6
 Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.
 
 
 7
 U.S. CONST. art. II, Sec. 2. See note 5 infra. Common sense dictates and history confirms that prudent exercise of the appointment power under Article II necessitates consultation by those making appointments. Because I am aware of no constitutional or ethical precept that prohibits the President, judges, or heads of departments from consulting with other persons when acting under Article II, and because there is nothing in any statute governing the appointment work of the Special Division that so limits its members, the challenged conduct of the accused judge is not "conduct prejudicial to the effective and expeditious administration of the business of the courts." Accordingly, for the reasons articulated below, I dismiss the complaints as not in conformity with 28 U.S.C. Sec. 372(c)(1).
 
 I. BACKGROUND
 
 8
 The subject of these complaints[1] is a judge of the United States Court of Appeals for the District of Columbia Circuit. In addition to his regular assignment on the D.C. Circuit, the judge also serves as a member of the Special Division.
 
 
 9
 There are three members of the Special Division, each of whom is appointed by the Chief Justice of the United States for a two-year term.[2] To establish a base of operation, Congress designated the Special Division a "division of the United States Court of Appeals for the District of Columbia [Circuit]," see 28 U.S.C. Sec. 49; but the Special Division is in no way involved with the judicial work of the D.C. Circuit. One appointee to the Special Division comes from the D.C. Circuit, and no more than one appointee can come from any particular court. The authority to appoint independent counsels is the principal responsibility of the Special Division.
 
 
 10
 The appointment authority of the Special Division is defined in detail in the Ethics in Government Act of 1978, as amended by the Independent Counsel Reauthorization Acts of 1987 and 1994 (collectively "the Ethics Act"). See generally 28 U.S.C. Secs. 591-599 (1988), as amended by Independent Counsel Reauthorization Act of 1994, 28 U.S.C.A. Secs. 591-599 (West Supp.Pamph. No. 5, Aug. 1994). Under the Ethics Act, the Special Division acts, upon receipt of an application from the Attorney General, to designate an independent counsel charged with the investigation and possible prosecution of criminal violations by certain federal government officials. See 28 U.S.C. Sec. 593. The independent counsel provisions of the Ethics Act expired in December 1992, see 28 U.S.C. Sec. 599 (1988), but were subsequently reenacted, with amendments not relevant here, by the Independent Counsel Reauthorization Act of 1994, Pub.L. No. 103-270, 108 Stat. 732 (1994).
 
 
 11
 In January 1994, during the period between the most recent expiration and reauthorization of the independent counsel statute, the Attorney General exercised her authority under 28 U.S.C. Sec. 543 (1988) (appointment of special attorneys) to appoint Robert B. Fiske, Jr., as an independent counsel to investigate the Whitewater matter. See Independent Counsel: In re Madison Guaranty Savings & Loan Association, 59 Fed.Reg. 5,321 (1994) (to be codified at 28 C.F.R. Secs. 600.1, 603.1) (establishing office of independent counsel). After the enactment of the 1994 Reauthorization Act, the Attorney General applied to the Special Division for the appointment of an independent counsel under the Act, and requested that Mr. Fiske receive this appointment. The Special Division rejected the advice of the Attorney General, and, on August 5, 1994, appointed Kenneth W. Starr, formerly a judge of the United States Court of Appeals for the District of Columbia Circuit and Solicitor General of the United States, to be the Whitewater independent counsel.
 
 
 12
 Shortly after the publication of the decision appointing Mr. Starr, the press reported that the subject judge had met for lunch with North Carolina Republican Senators Jesse Helms and Lauch Faircloth while the Attorney General's application was pending before the Special Division. See, e.g., Howard Schneider, Judge Met Sen. Faircloth before Fiske was Ousted, WASH.POST, Aug. 12, 1994, at A1. The news reports described Senator Faircloth as a critic of Mr. Fiske's investigation, and also referred to correspondence critical of Mr. Fiske that had been received by the Special Division from other members of Congress, correspondence which was not placed in the Division's public files until after news organizations appealed for its release. See id.
 
 
 13
 Following publication of these news reports, three complaints citing the subject judge's conduct were filed with the Clerk of the Court of Appeals, and thereafter referred to the Chief Judge of the Circuit. Complainant in No. 94-8, filed September 2, 1994, argues that the subject judge's meeting with Senators Helms and Faircloth, and his receipt of and failure immediately to disclose the congressional correspondence, constituted ex parte communications in violation of Canon 3(A)(4) of the CODE OF CONDUCT FOR UNITED STATES JUDGES. Complainant also asserts that the subject judge is required to recuse himself from participation in the Whitewater "proceeding," citing Canon 3(C)(1) and 28 U.S.C. Sec. 455(a) (1988) (judge should disqualify himself from proceeding in which his impartiality might reasonably be questioned). Complainant seeks the subject judge's "voluntary retirement" from the Special Division, an order from the Judicial Council that no further cases be assigned to the judge for a period of time, and a public censure or reprimand.
 
 
 14
 Complainant in No. 94-9, filed on September 16, 1994, questions the subject judge's "judgment" in appointing Mr. Starr, notes the "appearance of impropriety" arising from the lunch with the Senators, and questions whether the judge should have considered the correspondence from the members of Congress. Complainant seeks no specific relief, asking instead that the appointment of Mr. Starr be "studied" and the conduct of the subject judge "reviewed."
 
 
 15
 Finally, complainant in No. 94-10, also filed on September 16, 1994, cites an "appearance of impropriety" arising from the meeting with Senators Helms and Faircloth, and contends that the subject judge has "failed to uphold the integrity and independence of the judiciary." Complainant requests a public reprimand of the subject judge.
 
 
 16
 II. THE JURISDICTION OF THE JUDICIAL COUNCIL FOR THE D.C.
 
 CIRCUIT TO CONSIDER THIS MATTER
 
 17
 Before turning to the substance of complainants' allegations, there is a threshold jurisdictional question to be resolved, i.e., whether a member of the Special Division is subject to disciplinary proceedings in this circuit. In other words, because the Special Division does not operate as a part of the D.C. Circuit in conjunction with any business of the circuit's courts, it is unclear that the Judicial Council for the District of Columbia Circuit has jurisdiction over members of the Special Division with respect to matters unrelated to the courts of the D.C. Circuit.
 
 
 18
 Control of the disciplinary procedures established by the Judicial Councils Act is one of the "general administrative functions" of the Circuit Judicial Council. See H.R.REP. NO. 1313, 96th Cong., 2d Sess. 9 (1980). The Council, in turn, is empowered to "make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit." 28 U.S.C. Sec. 332(d)(1) (1988) (emphasis added). It is questionable whether this administrative authority extends to the Special Division. While nominally a division of the Court of Appeals for the District of Columbia Circuit, see 28 U.S.C. Sec. 49, the Special Division has no functional relationship to the Court of Appeals. The Division keeps its own records and establishes its own procedures.[3] Further, because the Division must include two judges who are not members of the Court of Appeals for the D.C. Circuit, see 28 U.S.C. Sec. 49(d), it cannot constitute a panel of the Court authorized to decide "cases or controversies" within the jurisdiction of the D.C. Circuit, and subject to the Court's en banc review. See id. Secs. 46(b) and (c) (1988). For all practical purposes, therefore, the Special Division is, as it was intended to be, see H.R.REP. NO. 1307, 95th Cong., 2d Sess. 12 (1978); 123 CONG.REC. 20,985-86 (1977), a "national" court whose activities have little or no relation to the "administration of justice" in the D.C. Circuit. That being the case, the Circuit Judicial Council arguably should have no administrative, and hence no disciplinary, authority over a member of the Special Division.
 
 
 19
 There is one significant wrinkle in this analysis. Even when acting in his capacity as a member of the Special Division, the judge who is the subject of the instant complaints may still be subject to disciplinary process in this circuit by virtue of his service as a judge of the Court of Appeals for the D.C. Circuit. The complaint procedure established by the Judicial Councils Act "applies to judges of the United States courts of appeals." D.C.CIR.JUD.MISCONDUCT R. 1(c). It is not limited to judges of this circuit only when they are performing work on behalf of the circuit. In other words, the statute appears to say that if a judge at any time engages in conduct that is prejudicial to the effective and expeditious administration of the business of the courts, a resulting charge of misconduct must be processed in the judge's "home" circuit. Indeed, if the subject judge's service on the Special Division is analogized to that of a judge who is "visiting" in another circuit, then it is clear that he is subject to the disciplinary authority of this, his home circuit. See id., Commentary on Rule 1 ("This language is intended to make it clear that the circuit in which a judge holds office is the appropriate circuit in which to file a complaint.... Complaints against a visiting judge from this circuit should be filed here." (emphasis in original)).
 
 
 20
 In light of the language of the Rule and Commentary, and in view of the fact that the subject judge does not contest disciplinary jurisdiction in this circuit, I will assume, for the purposes of reviewing the pending complaints, that the Judicial Council for the District of Columbia Circuit has jurisdiction to consider this case.
 
 
 21
 III. DO THE COMPLAINTS ALLEGE CONDUCT PREJUDICIAL TO THE
 
 
 22
 EFFECTIVE AND EXPEDITIOUS ADMINISTRATION OF THE
 
 
 23
 BUSINESS OF THE COURTS?
 
 
 24
 The central question presented for review is whether complainants have alleged "conduct prejudicial to the effective and expeditious administration of the business of the courts."
 
 
 25
 The primary business of the courts of this circuit is, of course, the resolution of "cases or controversies" within the jurisdiction conferred by Article III of the Constitution. See generally Flast v. Cohen, 392 U.S. 83, 94-95, 88 S.Ct. 1942, 1949-50, 20 L.Ed.2d 947 (1968) ("case or controversy" requirement defines and limits role of courts in "tripartite" allocation of powers, and guards against intrusion into areas committed to the other branches). The Special Division's authority to appoint an independent counsel arises not from Article III, however, but from the Appointments Clause of Article II, Section 2. See Morrison v. Olson, 487 U.S. 654, 673-79, 108 S.Ct. 2597, 2609-13, 101 L.Ed.2d 569 (1988). If the "business of the courts" is viewed as the exercise of Article III judicial power, then the conduct of a member of the Special Division, at least with respect to the exercise of the Division's appointment power, is entirely unrelated to, and can have no direct prejudicial effect on, the administration of Article III "business."
 
 
 26
 The legislative history and scholarly comments on the Judicial Councils Act support the view that section 372(c) was not intended to reach all allegations of misconduct, even those unrelated to the exercise of judicial power. See, e.g., S.REP. NO. 362, 96th Cong., 1st Sess. 3 (1979), reprinted in 1980 U.S.C.C.A.N. 4315, 4317 (complaints of conduct "not connected with the judicial office" are "outside the scope of this legislation"); 125 CONG.REC. 30,064 (1979) (statement of Sen. Bayh) (extrajudicial behavior covered by Act only if it affects performance on the bench);[4] James R. Browning, Evaluating Judicial Performance and Related Matters, 90 F.R.D. 197, 204 (1981) (noting administrative "thrust" of Act, as distinguished from state disciplinary procedures aimed at "misconduct" or "conduct that brings the judicial office into disrepute"). Consistent with this narrow reading of the "prejudicial conduct" standard, a number of Chief Judges and Judicial Councils have dismissed complaints alleging misconduct not directly related to judicial activities (e.g., comments by judges in speeches or newspaper interviews, participation in family members' legal actions, and perjury allegedly committed before taking the bench). See Richard L. Marcus, Who Should Discipline Federal Judges, and How?, 149 F.R.D. 375, 404-07 (1993) (citing dismissal orders).
 
 
 27
 It may be, however, that the "business of the courts" should be construed broadly enough to encompass the Special Division's administrative duties, which are, after all, conferred by a congressional grant of authority equal to, albeit separate from, the grant of Article III judicial power. See Morrison, 487 U.S. at 678-79, 108 S.Ct. at 2612-13. Alternatively, and more importantly, it is possible to interpret the statute to mean that the prejudicial conduct to which 28 U.S.C. Sec. 372(c)(1) refers includes any conduct that adversely affects the administration of the business of the courts. Thus, if a judge engages in any misconduct, even in his or her private life, it may be within the scope of 28 U.S.C. Sec. 372(c)(1) if the conduct has the proscribed effect. Indeed, the Court of Appeals of this circuit, in upholding the Judicial Councils Act against vagueness and overbreadth challenges, described the statutory standard as including "other conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Hastings v. Judicial Conf. of the United States, 829 F.2d 91, 106 (D.C.Cir.1987) (quoting Senate Report 362 at 9), cert. denied, 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988). This suggests that conduct causing only an indirect effect on the courts' judicial function may be subject to discipline. But see Stephen B. Burbank, Procedural Rulemaking under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980, 131 U.PA.L.REV. 283, 303 n. 79 (1982) (noting deletion of "disrepute" language from S. 1873).
 
 
 28
 In the instant case, it is unnecessary to determine the breadth of the statutory standard in order to dispose of the pending complaints. For however broadly the statutory standard is to be read, complainants do not allege conduct by the subject judge that could have even an indirect prejudicial effect on the administration of the business of the courts. Complainants' allegations, broadly referring to the "appearance of impropriety" and citing ethical strictures purportedly applicable to the judge's conduct, are grounded in a fundamental misunderstanding of the nature of the Special Division's authority.
 
 
 29
 The Supreme Court made clear in Morrison, 487 U.S. at 678-79, 108 S.Ct. at 2612-13, that, in considering and acting on an Attorney General's application for the appointment of an independent counsel, the Special Division is not exercising judicial power under Article III, but a species of Article II appointment power.[5] This power is, by its very nature, entrusted to the discretion of the appointing authority. Cf. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 167, 2 L.Ed. 60 (1803) (Article II appointment power of the President). In an adversarial judicial proceeding under Article III, however, there are competing parties who present evidence in support of a legal claim; and a judge looks solely to the record and the applicable rules of law to decide the case. A judge in a judicial proceeding who reaches outside of the record to decide a case defiles the process. Even an "appearance of impropriety" is unacceptable in such a setting, so "judicial proceedings" are subject to stringent constitutional (e.g., procedural due process), statutory (e.g., the commands of the Administrative Procedure Act), and ethical (e.g., the prohibition against ex parte contacts embodied in Canon 3(A)(4)) rules. These safeguards that are employed to ensure fairness in judicial proceedings are mostly irrelevant in connection with exercises of the appointment power.
 
 
 30
 The appointment functions of the Special Division certainly do not constitute adversarial proceedings. And in creating the Special Division, Congress recognized the difference between the appointment and judicial powers by making it clear that a judge who participates in the selection of an independent counsel while a member of the Special Division cannot thereafter participate in a judicial proceeding involving the independent counsel:
 
 
 31
 [N]o member of [the Special Division] of the court who participated in a function conferred on the division ... involving an independent counsel shall be eligible to participate in any judicial proceeding concerning a matter which involves such independent counsel while such independent counsel is serving in that office or which involves the exercise of such independent counsel's official duties, regardless of whether such independent counsel is still serving in that office.
 
 
 32
 28 U.S.C. Sec. 49(f).
 
 
 33
 It makes little sense to think that an authority acting pursuant to the Appointment Clause of Article II might be forbidden from consulting with others regarding candidates for appointment. It is hard to imagine how anyone would go about that task without seeking advice. Indeed, in the context of the President's exercise of the appointment power, the benefit of unfettered outside consultation is deemed so important that it may enjoy Constitutional protection. See Washington Legal Found. v. United States Dep't of Justice, 691 F.Supp. 483, 491-96 (D.D.C.1988) (application of Federal Advisory Committee Act ("FACA") to Presidential use of ABA committee on judicial nominations unconstitutionally burdens appointment power), aff'd on other grounds sub nom. Public Citizen v. United States Dep't of Justice, 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989); see also id., 491 U.S. at 482-89, 109 S.Ct. at 2581-84 (Kennedy, J., concurring in the judgment) ("[A]pplication of FACA would constitute a direct and real interference with the President's exclusive responsibility to nominate federal judges.").
 
 
 34
 It is equally anomalous to regard a person who acts under the Appointments Clause as one with the authority to "adjudicate" claims (as is true under Article III). I do not mean to suggest that Congress could not, consistent with the Appointments Clause and the doctrine of separation of powers, place restrictions on the Special Division's ability to gather information to assist it in exercising its statutory authority; however, this possibility does not transform the appointment process of the Special Division into a "judicial proceeding" subject to rules meant to protect Article III adversary proceedings.
 
 
 35
 Complainants would doubtless argue that, whether or not the members of the Special Division are acting pursuant to Article II or Article III, the Ethics in Government Act does place restrictions on the authority of the Special Division. In complainants' view--a view that I recognize may be shared by some members of the public, the press, and even the legal community--the Ethics Act was intended to take the appointment process out of the world of partisan politics, "to insure that the selection would not be influenced by the very sort of political considerations that the Act was adopted to avoid." See Chesterfield Smith, et al., Joint Statement Regarding Independent Counsel Selection Process 1 (Sept. 20, 1994). This view has been endorsed by five former Presidents of the American Bar Association. Id.[6] It is noteworthy, however, that neither the ABA Presidents' statement nor the complaints in this case cite any support for their reading of the Ethics Act. This is because there is nothing in the language or legislative history of the independent counsel provisions of the Act suggesting that the members of the Special Division are barred from consulting with others in the exercise of their appointment authority.
 
 
 36
 The Ethics Act, as amended, merely provides that the Special Division "shall appoint an appropriate independent counsel" upon receipt of an application from the Attorney General. 28 U.S.C. Sec. 593(b)(1). The Act places few limits on the Division's discretion in selecting an "appropriate" counsel, requiring only that the appointee have "appropriate experience," be a person who will conduct her duties in a "prompt, responsible, and cost-effective manner," and "without undue delay." Id. Sec. 593(b)(2). The one absolute qualification imposed by the Act is that the independent counsel may not be a "person who holds any office of profit or trust under the United States." Id.[7] The Act is utterly silent as to whether, or to what extent, the Special Division may solicit or consider the views of persons other than its own members.
 
 
 37
 The legislative history of the Ethics Act is similarly silent on this question, with one interesting exception. The Act provides that the Attorney General's application for appointment of an independent counsel "shall contain sufficient information to assist the division of the court in selecting an independent counsel and in defining that independent counsel's prosecutorial jurisdiction." 28 U.S.C. Sec. 592(d). The Senate Report on this provision expressly contemplates that the information provided may include "suggestions as to the names of individuals who would make good special prosecutors, which information would be of assistance to the division of the court." S.REP. NO. 170, 95th Cong., 1st Sess. 56 (1977), reprinted in 1978 U.S.C.C.A.N. 4216, 4272. If "[t]he entire purpose of appointing a temporary special prosecutor is to get someone who is independent, both in reality and appearance, from the President and the Attorney General," id. at 65-66, reprinted in 1978 U.S.C.C.A.N. at 4281-82, it is unlikely that Congress would find "suggestions" from the Attorney General permissible, yet assume that the Special Division would otherwise insulate itself from outside influences unconnected with the President or his administration.
 
 
 38
 When it is kept in mind that the "entire purpose" of the independent counsel statute was to provide independence from the Executive Branch, it is easy to see that complainants' view of the appointment process as a cloistered, apolitical judicial "proceeding" is quite far-fetched. The legislative history of the Ethics Act shows a clear emphasis on establishing a prosecutorial office free of any conflict of interest that might arise where officials of the Executive Branch are called upon to investigate their colleagues or superiors. See Senate Report 170 at 5-7, reprinted in 1978 U.S.C.C.A.N. at 4221-23. In addition, Congress sought in the Ethics Act to protect the independent counsel from interference at the hands of Executive Branch officials, such as the premature dismissal experienced by Archibald Cox during his Watergate investigation. See House Report 1307 at 5 & n. 10 (citing Watergate history, and quoting Humphrey's Executor v. United States, 295 U.S. 602, 629, 55 S.Ct. 869, 874, 79 L.Ed. 1611 (1935) ("[O]ne who holds his office during the pleasure of another, cannot be depended upon to maintain an attitude of independence against the latter's will.")). However, Congress has never expressed an intention to make the appointment process itself independent of all "nonjudicial" influences outside of the Executive Branch. This may be an aspiration that is now embraced by significant segments of society, but it finds no support in applicable constitutional, statutory, or ethical precepts.
 
 
 39
 Finally, it is not without significance that the Special Division's past practice, to which no prior objection seems to have been directed, is plainly inconsistent with complainants' view of the Division's proper role. According to a published description of the Special Division's appointment process (an account based on personal interviews with members of the Division and former independent counsel), Division members have routinely relied on consultations with and recommendations from judicial colleagues, former professional associates, and other members of the so-called "old-boy network." See KATY J. HARRIGER, INDEPENDENT JUSTICE: THE FEDERAL SPECIAL PROSECUTOR IN AMERICAN POLITICS 150-51 (1992). Even had the subject judge in this case discussed the pending application with his congressional friends and considered the submissions to the Division by other members of Congress,[8] he would have at most engaged in the same consultative process relied on by former members of the Special Division in connection with prior appointments. That those persons consulted might be political opponents of the President or his party should not expose the selection process to an anti-administration taint, any more than the Division's consideration of an Attorney General's recommendation should expose it to a charge of pro-administration partiality.
 
 IV. CONCLUSION
 
 40
 Whether or not the conduct of a judge of the Special Division can ever have sufficient direct or indirect prejudicial effect on the administration of the business of the courts to warrant the exercise of the circuit's disciplinary authority, it is clear that no such conduct occurred in this case. There may be some members of society who would question the actions of the accused judge, for they have a pristine (albeit arguably naive) view of the appointment process. But this is irrelevant. The simple point here is that, even accepting the complaints as true for purposes of this analysis, the judge who has been accused in this case would have violated no provision of law or ethical Canon. There is no basis whatsoever for proceedings against this judge.
 
 
 41
 In sum, complainants have failed to allege conduct prejudicial to the effective and expeditious administration of the business of the courts. Accordingly, the complaints shall be dismissed for failure to conform to 28 U.S.C. Sec. 372(c)(1).[9]
 
 
 
 [1]
 This Circuit's Rules governing the processing of complaints of judicial misconduct prohibit disclosure of the subject judge's identity under these circumstances. See D.C.CIR.JUD.MISCONDUCT R. 4(f)(1)
 
 
 [2]
 The Chief Justice recently reappointed the subject judge to serve a second two-year term as a member of the Special Division
 
 
 [3]
 With respect to the Division's records and procedures, I note that the Senate Governmental Affairs Committee recently called on the Division, and not the Court of Appeals or Circuit Council, to promulgate "rules of procedure for practice before it, clarify available avenues of appellate review, and undertake to catalogue and preserve independent counsel reports and make public versions accessible upon request." S.REP. NO. 101, 103d Cong., 2d Sess. 21 (1994), reprinted in 1994 U.S.C.C.A.N. 748, 766
 
 
 [4]
 Both the Senate Report and Senator Bayh's remark refer to an early version of S. 1873, a bill that contained a judicial disciplinary structure, including a formal "Court on Judicial Conduct and Disability," much different from the one ultimately adopted in the Judicial Councils Act. The Senate bill contained an essentially identical, if not broader, substantive standard for discipline--conduct inconsistent with the effective and expeditious administration of the business of the courts. See Senate Report 362 at 31
 
 
 [5]
 The Court in Morrison held as follows:
 [W]e do not think it impermissible for Congress to vest the power to appoint independent counsel in a specially created federal court. We thus disagree with the Court of Appeals' conclusion that there is an inherent incongruity about a court having the power to appoint prosecutorial officers....
 ....
 ... [O]nce it is accepted that the Appointments Clause gives Congress the power to vest the appointment of officials such as the independent counsel in the "courts of Law," there can be no Article III objection to the Special Division's exercise of that power, as the power itself derives from the Appointments Clause, a source of authority for judicial action that is independent of Article III.
 487 U.S. at 676, 678-79, 108 S.Ct. at 2611, 2612 (footnotes omitted).
 
 
 [6]
 Complainant in No. 94-8 submitted this document to me on October 18, 1994, together with a letter protesting delay in my disposition of the complaint. Noting that I "no doubt feel uncomfortable" reviewing the conduct of one of my colleagues, complainant urges me to appoint an investigating committee without further delay, thus relieving me of any further discomfort, and "eliminating any possible criticism that the matter was whitewashed at the preliminary stage by a single judge who is a colleague of the judge whose conduct is in question." Complainant's comments are inapposite, if not offensive. I received these complaints on September 16, 1994, the day after I became Chief Judge of the Circuit. Any delay in the completion of my review has resulted from my determination to address these matters with the thoroughness they deserve, while dealing with a number of other responsibilities of my office. And contrary to complainant's surmise, I am not at all "uncomfortable" with the responsibility of reviewing the conduct of a judicial colleague
 
 
 [7]
 This provision would have excluded Robert Fiske, the "regulatory" Whitewater independent counsel, from appointment pursuant to the Act, had not Congress, in the 1994 Reauthorization Act, expressly exempted him from exclusion. See Pub.L. No. 103-270, Sec. 7(h), 108 Stat. at 738
 
 
 [8]
 Complainant in No. 94-8 also finds fault in the subject judge's failure to disclose the existence or contents of these letters until requested to do so by a representative of the press. The Act provides that the Special Division "may ... allow the disclosure of any notification, application, or any other document, material, or memorandum supplied to the division of the court under this chapter." 28 U.S.C. Sec. 593(g) (emphasis supplied). The Act does not appear to require the release of materials submitted to it. In any event, this is a matter of statutory construction for the Special Division; even if I disagreed with the Special Division's disposition, this would not be evidence of misconduct proscribed by the Judicial Councils Act
 
 
 [9]
 Pursuant to 28 U.S.C. Sec. 372(c)(10) (1988) and D.C.CIR.JUD.MISCONDUCT R. 5, complainants may file a petition for review by the Judicial Council for the District of Columbia Circuit. Any petition must be filed in the Office of the Clerk of the Court of Appeals within 30 days of the date of the Clerk's letter transmitting the dismissal Order and this Opinion. Id. R. 6(a)