294 F.3d 947
 In re Complaint Against Circuit Judge Richard D. CUDAHY.[1]
 No. 02-7-372-7.
 
 Judicial Council of the Seventh Circuit.
 Filed May 16, 2002.
 Decided May 24, 2002.
 COPYRIGHT MATERIAL OMITTED POSNER, Circuit Judge.
 
 
 1
 The chairman and a member of the Committee on the Judiciary of the House of Representatives have filed a complaint against Judge Richard D. Cudahy of this court. Section 372(c)(1) of the Judicial Code provides in relevant part that "any person alleging that a circuit ... judge ... has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts ... may file with the clerk of the court of appeals for the circuit a written complaint containing a brief statement of the facts constituting such conduct." The clerk is required to transmit the complaint to the chief judge of the court, § 372(c)(2), but Chief Judge Flaum having recused himself in this matter, the responsibility for acting in his place has, pursuant to Rule 18(e) of the Rules of the Judicial Council of the Seventh Circuit Governing Complaints of Judicial Misconduct or Disability, fallen to me by virtue of seniority. Among the authorized responses of the chief judge (or, in this case, his surrogate) to a complaint of judicial misconduct is to "conclude the proceeding if [I find] that appropriate corrective action has been taken or that action on the complaint is no longer necessary because of intervening events." § 372(c)(3)(B). As I shall explain, that is the appropriate response to the complaint against Judge Cudahy.
 
 
 2
 The complaint is detailed and together with the 13 exhibits appended to it provides a comprehensive picture of the conduct of Judge Cudahy that gave rise to the complaint. After President Clinton was acquitted by the Senate at his trial for the offenses charged in the impeachment voted by the House of Representatives, the Independent Counsel continued to investigate the President with a view toward deciding whether to seek a criminal indictment. Eventually, of course, he (Robert W. Ray, Kenneth Starr's successor) decided not to. But before that happened, in August of 2000, he empaneled a grand jury and notified the Special Division of the U.S. Court of Appeals for the District of Columbia Circuit, which appoints and oversees Independent Counsels, of his action. Upon learning that the Independent Counsel was moving ahead with his investigation, the Special Division, of which Judge Cudahy is a member, voted unanimously not to terminate the investigation, as it could have done under 28 U.S.C. § 596(b)(2). The previous year, after President Clinton's acquittal, Judge Cudahy had voted for termination, and so a journalist asked him why he had changed his mind. He said it was because he had learned that the Independent Counsel was pressing ahead with his criminal investigation of the President, and as an example of the counsel's activity he mentioned the empaneling of the grand jury.
 
 
 3
 The journalist reported that the Independent Counsel had empaneled a grand jury but did not report the source. A media storm ensued because the report came during the 2000 Democratic Presidential Convention and indeed on the eve of Vice President Gore's speech accepting the Democratic nomination for President and it was assumed, therefore, that either the Independent Counsel or both or either of the two judges of the three-judge Special Division who had been appointed by Republican Presidents (Judge Cudahy was appointed by a Democratic President) had leaked the news about the grand jury in order to poison Gore's moment of triumph by reminding the public of President Clinton's misconduct. A conference call among the members of the Special Division and the Independent Counsel was arranged for the next day and in that phone conference the presiding judge said that he wanted a criminal investigation into who the leaker had been. The Independent Counsel "was reluctant to agree to one. I [Ray] explained that our experience had been that leak investigations were time-consuming and disruptive to the work of the [Independent Counsel's] Office and would require interviews and polygraph examination of all persons who had access to the confidential information." At this point Judge Cudahy revealed that he had been the source of the journalist's disclosure of the grand jury investigation. He issued a public statement to that effect and an apology, saying that his mention of the investigation had been a mistake but that it had been inadvertent. The Independent Counsel later asked Judge Cudahy to recuse himself from further participation in any work relating to the Office of the Independent Counsel, on the ground that such participation would create an appearance of impropriety. Judge Cudahy refused, saying in effect that, having been burned once, he certainly wasn't going to make any further disclosures to the press.
 
 
 4
 The complaint of misconduct makes a number of charges that the complainants deem to require further investigation. I have concluded that none of them justifies the convening of a panel of judges to investigate the charges further. See 28 U.S.C. § 372(c)(4). The charges and my evaluation of each of them follow, but I should note preliminarily, first, that although the charges all relate to Judge Cudahy's service on the Special Division, which is a branch of the District of Columbia Circuit, the complainants were correct to file their complaint with the Judicial Council of the Seventh Circuit, Judge Cudahy's home court; and, second, that although the function of the Special Division is administrative rather than judicial, non-judicial conduct by a judge can be "prejudicial to the effective and expeditious administration of the business of the courts" and thus fall within the purview of section 372(c). In re Charge of Judicial Misconduct or Disability, 39 F.3d 374, 378 (D.C.Cir. Jud.C.1994).
 
 
 5
 1. The first charge in the complaint is that "the disclosure of the grand jury investigation may well constitute a knowing violation of Fed.R.Crim.P. 6(e) prohibiting public disclosure of `matters occurring before the grand jury.'" The purpose of Rule 6(e) is to protect the confidentiality of the grand jury's hearings and deliberations, and the term "matters occurring before the grand jury" is interpreted accordingly. See Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1097 (7th Cir.1992) ("the general rule is that Rule 6(e)'s nondisclosure requirement applies to anything that may reveal what occurred before the grand jury"); In re Sealed Case No. 99-3091, 192 F.3d 995, 1001 (D.C.Cir.1999) (per curiam) (the phrase "matters occurring before the grand jury" encompasses "not only what has occurred and what is occurring, but also what is likely to occur, including the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like" (internal quotations and citation omitted)); United States v. Phillips, 843 F.2d 438, 441 (11th Cir.1988) ("the term `matters occurring before a grand jury' has been defined to include anything that will reveal what transpired during the grand jury proceedings"); Standley v. Department of Justice, 835 F.2d 216, 218 (9th Cir.1987) ("anything which may reveal what occurred before the grand jury" or "information which would reveal the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like" (internal quotations and citations omitted)); 1 Sara Sun Beale et al., Grand Jury Law & Practice § 5:6, at p. 5-28 (2d ed. 2001) ("the touchstone for determining whether the disclosure of a particular item would reveal a `matter occurring before the grand jury' is whether the disclosure of the item would reveal something of substance about the grand jury's investigation"); U.S. Department of Justice, Federal Grand Jury Practice 157 (1993) ("Rule 6(e) does not cover all information developed during the course of a grand jury investigation, but only information that would reveal the strategy or direction of the investigation, the nature of the evidence produced before the grand jury, the views expressed by members of the grand jury, or anything else that actually occurred before the grand jury").
 
 
 6
 These formulations do not suggest that the mere fact of the existence of a grand jury is automatically to be deemed a matter occurring before it, cf. In re Grand Jury Investigation, 903 F.2d 180 (3d Cir.1990); In re Special Grand Jury, 674 F.2d 778, 779-81 (9th Cir.1982); 1 Beale et al., supra, § 5:6, p. 5-28 n. 2 ("ministerial grand jury records, such as records reflecting the empaneling and extension of the grand jury, are not within the reach of Rule 6(e) because they reveal nothing of substance about the grand jury's investigation"), unless revelation of its existence would disclose the identities of the targets or subjects of the grand jury's investigation and by doing so either incite them to flee or, should they never be indicted, subject them to undeserved bad publicity. United States v. Procter & Gamble Co., 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 219 n. 10, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); Martin v. Consultants & Administrators, Inc., supra, 966 F.2d at 1097; Impounded, 277 F.3d 407, 411, 415 (3d Cir.2002); In re Charlotte Observer, 921 F.2d 47, 50 (4th Cir.1990) (per curiam); United States v. Phillips, supra, 843 F.2d at 441; Susan W. Brenner & Gregory G. Lockhart, Federal Grand Jury: A Guide to Law and Practice § 8.4.4(a), p. 208 (1996); U.S. Department of Justice, Federal Grand Jury Practice, supra, at 17, 164. But as the subject of the investigation was known by all to be President Clinton, there was no breach of Rule 6(e)'s policy of confidentiality in revealing the existence of the grand jury. See In re Sealed Case No. 99-3091, supra, 192 F.3d at 1004; In re Charlotte Observer, supra, 921 F.2d at 50.
 
 
 7
 2. "Judge Cudahy's disclosure also appears to have impermissibly disclosed a matter under seal." The reference is to the fact that the letter in which the Independent Counsel told the Special Division that he had empaneled a grand jury had printed on it the words "Under Seal." The complaint refers to this as "a court's seal," but it is not. I am not aware of any rule that requires a judge, whether serving on the Special Division or otherwise, to conceal material merely because a lawyer has stamped it "under seal"; and the complaint points to none. On the contrary, judges frequently refuse to allow materials that both sides to a lawsuit wish sealed to be sealed, because of the presumption that judicial proceedings are public. Jessup v. Luther, 277 F.3d 926, 927-28 (7th Cir.2002); Union Oil Co. v. Leavell, 220 F.3d 562, 567-68 (7th Cir. 2000); United States v. Ladd, 218 F.3d 701, 704 (7th Cir.2000); Pepsico, Inc. v. Redmond, 46 F.3d 29 (7th Cir.1995) (chambers opinion). This charge adds nothing to the first charge.
 
 
 8
 3. "Judge Cudahy may have sought to conceal from the Independent Counsel and the other Judges of the Special Division his responsibility for the disclosure." The chronology belies this charge. He revealed his responsibility in the conference call that, occurring the day after the disclosure, constituted the first discussion of the matter among the judges. At first, it is true, when the other judges suggested asking the Justice Department and FBI to conduct a full investigation of the leak, Judge Cudahy suggested that the leak wasn't a big deal and that a full investigation was unnecessary; and recall that the Independent Counsel himself was reluctant to get enmeshed in an investigation of the leak. But when the other two judges of the Special Division made clear their determination that a full investigation be launched, Judge Cudahy revealed that he was the source of the leak, thus obviating the need for an investigation. The fact that he did not say this at the outset of the conversation cannot reasonably be regarded as a delay of such magnitude as to constitute an ethical violation. The complaint does not indicate what ethical rule or principle the delay might have violated.
 
 
 9
 4. The complaint implies that Judge Cudahy revealed himself as the source of the leak under threat of being subjected to a lie-detector test. But of course he could not have been forced to take such a test. The Independent Counsel's reference to such tests, which I quoted earlier, seems to have been intended merely to help explain his reluctance to conduct an investigation.
 
 
 10
 5. "Judge Cudahy's descriptions of these events in correspondence with the Chief Justice [to whom the judge had written an explanation of the imbroglio] and this Committee [the House Judiciary Committee] is inconsistent with the descriptions provided by Judges Sentelle and Fay [the other members of the Special Division] and Independent Counsel Ray. These descriptions may constitute knowingly false statements in violation of 18 U.S.C. § 1001." In support of this very serious charge (18 U.S.C. § 1001 is a felony statute), the complaint quotes a letter from Judge Cudahy to Congressman Henry Hyde in which the judge states that his "only motive in making the admission was concern that Robert Ray was being unfairly accused" and thus his admission "was entirely gratuitous, spontaneous and unforced by any other person." The complaint asserts that the admission "was made only after it became clear that there was going to be a criminal investigation which would in all likelihood have uncovered his misconduct," and implies that he made the admission only to head off "a criminal investigation and a polygraph examination." The assertion and implication lack sufficient plausibility to warrant a further investigation. There was no basis for a criminal investigation of Judge Cudahy, since the facts alleged in the complaint show that he did not violate Rule 6(e). In this connection I note that no motive has been suggested for Judge Cudahy, appointed by a Democratic President, to rain on Vice President Gore's parade. It was because the disclosure of the grand jury investigation harmed the Democrats that the Republican Independent Counsel and the Republican-appointed Special Division judges were suspected of being the leakers; hence their determination to identify the true source of the leak. Judge Cudahy stated in his letter to Congressman Hyde that he had intended to disclose his responsibility for the leak in the course of the conference call, and that he opposed the investigation only because it would have been "the height of hypocrisy to vote to investigate one's own `leak.'"
 
 
 11
 6. "Judge Cudahy may have wrongly refused to recuse himself," in violation of 28 U.S.C. § 455, which requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Recusal would have been required had the leak implied that Judge Cudahy was hostile to the Independent Counsel; but the complaint does not attribute to Judge Cudahy the Machiavellian, and actually quite senseless, design of trying to spoil Vice President Gore's nomination in the hope that the blame would fall on the Independent Counsel (for whose appointment Judge Cudahy had voted) and discredit him, supposing Judge Cudahy was able to conceal his own responsibility. I am unable, therefore, to find the basis for the charge that he should have recused himself from further involvement in the oversight of the Independent Counsel. In any event, an erroneous failure to recuse oneself from considering a particular matter is a legal error rather than judicial misconduct.
 
 
 12
 7. The complaint implicitly charges that Judge Cudahy's action in telling a reporter that the Independent Counsel had empaneled a jury was unethical quite apart from Rule 6(e) of the Criminal Code. Judges are not to comment publicly on pending cases and a comment to a journalist might well be considered a public comment. But it is important to note that the Special Division, at least so far as the appointment and termination of Independent Counsels is concerned (the Division's central responsibility), does not exercise judicial power; it exercises administrative power pursuant to the appointments clause of Article II (§ 2, cl. 2). In re Charge of Judicial Misconduct or Disability, supra, 39 F.3d at 379-80. (This casts further doubt on the sixth charge above, which has reference to recusal of judges in judicial matters.) To the extent that the exercise of these administrative powers might warrant public disclosure of the activities of an Independent Counsel, including disclosure to the press, such disclosure presumably would not be a breach of judicial ethics; at least I know of no authority for regarding it as such and the complaint suggests none.
 
 
 13
 In this case of course the public disclosure of the Independent Counsel's activity was unfortunate, but Judge Cudahy apologized for the flap that ensued as well as seeking to mitigate its impact by prompt admission that he was the source of the disclosure. I do not interpret his apology as a confession of having "engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts," and in any event the statute authorizes me to conclude a proceeding if I find that "appropriate corrective action has been taken or that action on the complaint is no longer necessary because of intervening events." This statutory language could have been drafted with this matter in mind. Judge Cudahy's apology is corrective action and among the intervening events that make it clear that no further investigation is necessary are the decision by the Independent Counsel not to seek an indictment of President Clinton, Clinton's departure from office, the expiration of the Independent Counsel statute, Robert Ray's resignation as Independent Counsel, and the complaint itself and its exhibits, which provide so comprehensive a picture of the complained-of conduct as to leave me without a clue as to what additional facts an investigation might bring to light; the complaint does not suggest any.
 
 
 14
 This disciplinary proceeding is hereby concluded.
 
 
 
 Notes:
 
 
 [1]
 Because of the publicity accorded the complaint, Judge Cudahy has waived confidentiality, in accordance with 28 U.S.C. § 372(c)(14)(C)