In re the **CHARLOTTE OBSERVER, (A DIVISION OF THE KNIGHT PUBLISHING COMPANY AND HERALD PUBLISHING COMPANY), Petitioner.**

No. 90–5912.

United States Court of Appeals,
Fourth Circuit.

Submitted Nov. 1, 1990.

Decided Nov. 6, 1990.

Amended by Order Filed Nov. 29
and Dec. 20, 1990.

**48**

Jonathan E. Buchan, James G. Middle-brooks, Smith, Helms, Mulliss & Moore, Charlotte, N.C., David W. Robinson, II, Robinson, McFadden & Moore, Columbia, S.C., for petitioners.

E. Bart Daniel, U.S. Atty., John M. Barton, Asst. U.S. Atty., Columbia, S.C., for respondents.

Before WIDENER, CHAPMAN, and NIEMEYER, Circuit Judges.

PER CURIAM:

The petitioners publish newspapers of general circulation in the States of North Carolina and South Carolina. They seek a writ of mandamus to vacate two oral injunctions issued by the United States District Court for the District of South Carolina on October 31, 1990, when the district judge enjoined a reporter from *The Charlotte Observer* and a reporter from the *Rock Hill Herald* not to disclose the name of an attorney, who had been identified in open court and in the presence of the two reporters, as a target of an ongoing grand jury investigation. The reporters were advised that they would be held in contempt of court if they published in their respective newspapers the name of this attorney.

At the time the restriction was placed upon the release of this information, the reporters asked to be heard, but this request was denied. Several hours later the district court heard and considered the argument of an attorney representing both *The Charlotte Observer* and the *Rock Hill Herald*. At that time it was requested that the injunction be lifted and that the two newspapers be allowed to report the name of the attorney, who had earlier been identified as a target of the investigation. This request was denied and the injunction remains in force.

Petitioners seek immediate relief in this court. Consideration of this petition has been greatly expedited, but due process requires that the respondents be given an opportunity to oppose the petition. The United States Attorney has now filed a brief in opposition to the petition for the writ of mandamus. After consideration of the undisputed facts and the legal authorities submitted, we find that the legal issues are sufficiently presented in the documents before the court, and that oral argument will not aid the decisional process.

"Mandamus is the preferred method for review of orders restricting press activity related to criminal proceedings...." *In re Washington Post*, 807 F.2d 383, 388 (4th Cir.1986).

The present controversy arose in open court and immediately followed a Rule 11 proceeding in which a defendant, Roy F. Hunter, entered a guilty plea to certain criminal charges in connection with Operation Avalanche, a large drug investigation, which to date has produced 43 indictments in North and South Carolina and a total of 14 guilty pleas in South Carolina. Prior to his guilty plea, defendant Hunter had been under a $2500 cash bond. After his plea, Hunter advised the district court that when the cash bond was posted, he executed an assignment of the $2500 to his then attorney. However, since the assignment, the district court had ruled that the attorney, Michael Byrd, could not represent Hunter. The district judge recalled that he had earlier ruled that Attorney Byrd could not represent Hunter "in this case because he

was a target in this investigation.... Therefore, I would not permit you to pay him any fee for representing you in this case."

Shortly thereafter, the judge became aware that there were two newspaper reporters in the courtroom, and he directed each reporter "not to put anything in your news report about Mr. Byrd." The court further observed:

I'm just ruling—and I expect you to abide by it. Because I didn't realize you were in court.

Because this is a matter that has been confidential—handled confidentially by the court all the way through. I do not want to jeopardize any person's right to a fair trial.

So, I'm directing that neither one of you put anything in any of your news releases about Mr. Byrd.

The court also advised the attorneys that violation of his order would result in "being held before me for contempt of court."

■ The district court did not explain whose right to a fair trial might be prejudiced by the publication of the attorney's name. Hunter had already entered his plea of guilty, and we are not aware of how publishing the attorney's name could prejudice the other indicted defendants awaiting trial or then in the process of trial. The publication of the attorney's name would likely cause damage to his reputation and cause him personal anguish, but it could not damage his right to a fair trial. He has not been indicted, and he may not be indicted. If he is indicted, such event will be reported by the media, and the report of an indictment does not impinge upon the constitutional right to a fair trial.

■ In the hearing at which the petitioners' attorney appeared, the district court broadened its concern to include protecting the confidentiality of the grand jury proceedings and protecting the reputation of the attorney. These are obvious concerns, but because the attorney's name was revealed in open court, we conclude that the issue has already been decided by the United States Supreme Court in a number of prior restraint cases. *See Oklahoma Publishing Co. v. District Court,* 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977); *Nebraska Press Assoc. v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), and *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). In *Nebraska Press Association,* the Court outlined the long history of the problems presented by the conflict between a defendant's constitutional right to a fair trial before an unbiased jury and the constitutional guarantee of freedom of the press. In discussing prior decisions in *Nebraska Press,* the Court noted:

The thread running through all these cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative.

A prior restraint, by contrast and by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication "chills" speech, prior restraint "freezes" it at least for the time.

The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events. Truthful reports of public judicial proceedings have been afforded special protection against subsequent punishment ... for the same reasons the protection against prior restraint should have particular force as applied to reporting of criminal proceedings, whether the crime in question is a single isolated act or a pattern of criminal conduct.

427 U.S. at 559, 96 S.Ct. at 2803 (citations omitted) (footnote omitted).

The Court went on to discuss events that occur in the courtroom as follows:

> To the extent that this order prohibited the reporting of evidence adduced at the open preliminary hearing, it plainly violated settled principles: "[T]here is nothing that proscribes the press from reporting events that transpire in the courtroom." ... The County Court could not know that closure of the preliminary hearing was an alternative open to it until the Nebraska Supreme Court so construed state law; but once a public hearing had been held, what transpired there could not be subject to prior restraint.

427 U.S. at 568, 96 S.Ct. at 2807 (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362–63, 86 S.Ct. 1507, 1522–23, 16 L.Ed.2d 600 (1966)) (citations omitted).

 The government argues that the injunction is justified under Fed.R.Crim.P. 6(e)(3)(C) which is the general rule of secrecy protecting grand jury proceedings. Secrecy of grand jury proceedings serves to protect the integrity of an investigation, and also to protect potentially innocent persons accused but exonerated by the grand jury. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). In appropriate circumstances a court might well issue curative orders protecting the business and the secrecy of the grand jury. *See Matter of Special March 1981 Grand Jury*, 753 F.2d 575, 577 (7th Cir.1985) (court has inherent power to issue an appropriate curative order preventing a person to whom disclosure was erroneously made from using the information). On the present record, however, "the cat is out of the bag." The district court did not close the hearing and the disclosure was made in the courtroom, a particularly public forum. Once announced to the world, the information lost its secret characteristic, an aspect that could not be restored by the issuance of an injunction to two reporters. The district court injunction applied *only* to the two reporters and not to others who may have obtained the information from some collateral source. Moreover, the attorney, whose name was inadvertently mentioned in open court, in all probability was aware that he was a target of the investigation because such targets are often notified by letter from the United States Attorney, and this would be expected when the target is a practicing attorney.

To enjoin the press from publishing the name of the person identified in open court as a target of a grand jury investigation is the type of prior restraint condemned in *Nebraska Press*. Once the name has been made public in open court, the First Amendment protection of a free press comes into play. On the present record where only a target's name has been mentioned, Federal Rule of Criminal Procedure 6(e)(3)(C) is not strong enough to resist the force of the First Amendment.

Therefore, the oral injunctions issued by the district court on October 31, 1990, forbidding the reporters of *The Charlotte Observer* and the *Rock Hill Herald* to disclose the name of the attorney mentioned in open court are hereby vacated.