

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-19-1997

# United States v. Smith, et al.

Precedential or Non-Precedential:

Docket 97-5176

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Smith, et al." (1997). *1997 Decisions*. Paper 198.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/198

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

iled August 19, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-5176

UNITED STATES OF AMERICA

v.

J. DAVID SMITH; STEVEN D'ANDREA;
JOSEPH LA PORTA

*GTECH, INTERVENOR IN D.C.

NEWARK MORNING LEDGER CO.; COX TEXAS
PUBLICATIONS, INC.; DALLAS MORNING NEWS, INC.,
INTERVENORS IN D.C.,
APPELLANTS

*Amended 5/15/97

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Crim. No. 94-cr-00524)

Argued: June 6, 1997

Before: BECKER and SCIRICA, Circuit Judges, and
KELLY, District Judge.**

(Filed August 19, 1997)

---

**Honorable James McGirr Kelly, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

DONALD A. ROBINSON, ESQUIRE
STEVEN L. LAPIDUS, ESQUIRE
  (ARGUED)
KEITH J. MILLER, ESQUIRE
Robinson, Lapidus & Livelli
Two Penn Plaza East, Suite 1100
Newark, NJ 07105-2237

Attorneys for Appellants Newark
Morning Ledger Co., Publisher of The
Star-Ledger, Cox Texas Publications,
Inc., Publisher of the Austin-
American Statesman, and the Dallas
Morning News, Inc., Publisher of The
Dallas Morning News

Of Counsel:

JONATHAN D. HART, ESQUIRE
MICHAEL KOVAKA, ESQUIRE
Dow, Lohnes, & Albertson, PLLA
1200 New Hampshire Avenue, NW
Suite 800
Washington, DC 20036-6082

For Cox Texas Publications, Inc.,
Publisher of the Austin-American
Statesman

PAUL C. WATLER, ESQUIRE
RACHEL E. BOEHM, ESQUIRE
Jenkens & Gilchrist
A Professional Corporation
Fountain Place
1445 Ross Avenue, Suite 3200
Dallas, TX 75202

For The Dallas Morning News, Inc.
Publisher of The Dallas Morning Star

2

FAITH S. HOCHBERG, ESQUIRE
United States Attorney
KIMBERLY M. GUADAGNO,
 ESQUIRE (ARGUED)
KEVIN McNULTY, ESQUIRE
Assistant United States Attorney
970 Broad Street, Room 502
Newark, NJ 07102

Attorneys for Appellee United States
of America

DAVID POVICH, ESQUIRE
BARRY S. SIMON, ESQUIRE
 (ARGUED)
SEAN ESKOVITZ, ESQUIRE
Williams & Connolly
725 12th Street, NW
Washington, DC 20005

Attorneys for Appellee GTECH
Corporation
Intervenor in D.C.

JOHN J. GIBBONS, ESQUIRE
 (ARGUED)
LAWRENCE S. LUSTBERG,
 ESQUIRE
MARK A. BERMAN, ESQUIRE
Crummy, Del Deo, Dolan, Griffinger
 & Vecchione
A Professional Corporation
One Riverfront Plaza
Newark, NJ 07102

Attorneys for Appellee J. David Smith

3

KEVIN H. MARINO, ESQUIRE
  (ARGUED)
RICHARD E. SHAPIRO, ESQUIRE
One Newark Center, Suite 1600
Newark, NJ 07102-5211

Attorneys for Appellee Steven
D'Andrea

CATHY FLEMING, ESQUIRE
Fleming, Roth & Fettweis
744 Broad Street
Suite 701
Newark, NJ 07102

J. A. CANALES, ESQUIRE
Canales & Simonson
2601 Morgan Avenue
P.O. Box 5624
Corpus Christi, TX 78465-6524

Attorneys for Intervenor Ben Barnes

**OPINION OF THE COURT**

BECKER, Circuit Judge.

This appeal by the Newark Morning Ledger Co., Cox
Texas Publications, Inc., and the Dallas Morning News, Inc.
("newspapers"), who unsuccessfully sought access to
certain records and proceedings in the sentencing phase of
a criminal case in the district court, requires us to resolve
certain tensions between the media's First Amendment
right of access to judicial proceedings and the rule of
confidentiality of grand jury material, see Fed. R. Crim. P.
6(e). The focus of the newspapers' attention is the putative
misconduct of the government in publicly disclosing its
sentencing memorandum which contained allegations of
criminal conduct against several individuals who have not
been charged with any crimes ("uncharged individuals").
The memorandum was addressed to the sentencing of J.
David Smith and Steven D'Andrea, who had been convicted

4

of various charges in connection with a state lottery kickback scheme (which made the matter one of great public interest). At the same time that it submitted the memorandum to the court, the government posted it on its Internet website and made copies available to members of the press, the public, and state lottery regulators.

Smith and D'Andrea, Smith's employer GTECH Corporation (a company that provides computer and other services to state lottery authorities), and the uncharged individuals mentioned in the sentencing memorandum complained to the district court, contending that the memorandum contained grand jury material, and asserting that the government had violated Rule 6(e) by disclosing it to the public. The district court sealed the sentencing memorandum on the ground that 6(e) material was implicated, and, for the same reason, ordered the parties to file under seal briefs concerning the extent to which the sentencing memorandum was sourced in secret grand jury material.

The newspapers filed a motion to intervene (which was granted) and for access to the papers and proceedings. At a hearing on the motion, they contended that they had a First Amendment and a common law right of access thereto. The parties opposing access (Smith, D'Andrea, GTECH, and those whose names are mentioned in the sentencing memorandum) objected that access would result in the disclosure of putative grand jury material in violation of Rule 6(e). The district court agreed, and entered an order denying the newspapers' request for access to the sentencing memorandum, the briefs, and the hearing it had scheduled on the question whether the government had violated Rule 6(e). The district court also made clear that, after it made its determination, all aspects of the proceedings (including the briefs and the transcript of the hearing) would be opened up (except to the extent prohibited by Rule 6(e)). The newspapers filed a timely appeal, and we stayed the hearing before the district court pending our resolution of the matter.

We first conclude that the segment of the newspapers' appeal seeking access to the sentencing memorandum is moot, as the newspapers already have copies of it. With

respect to the briefs and hearing, even though the proceedings at issue before the district court concern alleged government misconduct and hence public access to them would serve important functions, there is no presumptive First Amendment or common law right of access to them if secret grand jury material would be disclosed by that access. Indeed, as the government has represented, the district court will necessarily have before it previously undisclosed grand jury material. Moreover, Rules 6(e)(5) and 6(e)(6) require a court to seal any papers or hearings "affecting" or "relating to" grand jury proceedings, which includes any proceedings that would disclose secret grand jury material. We conclude that grand jury secrets might be disclosed by the briefs and hearing to which the newspapers seek access, and conclude that the district court acted properly in ensuring that such material remains confidential while it makes its determination whether that material is in fact secret grand jury material. Under such circumstances, in camera review of the disputed material is necessary.

Rejecting the newspapers' alternative request, we will not require the district court to redact the briefs or to open up the nonsecret aspects of the hearing, for that would be highly impractical and inefficient and would create a circus-like "revolving door" hearing. Moreover, although there is (and can be) no prior restraint on the use by the newspapers of material already in their possession, we conclude that the potential grand jury material contained in the sentencing memorandum is entitled to the protection afforded to it by the district court despite the fact that it has already been publicly disclosed. We will therefore affirm the order of the district court sealing the briefs and the hearing and remand so that the district court can hold its scheduled in camera hearing. If and when the district court determines that aspects of those briefs and hearings are nonsecret, it shall, as it has already promised, disclose those aspects to the public.

I. Facts and Procedural History

On October 4, 1996, Smith and D'Andrea were convicted in the District Court of twenty felony counts arising out of

a state lottery kickback scheme following a jury trial. Smith had been National Sales Manager of GTECH Corporation. In that capacity, he had received illegal payments from Benchmark Enterprises, Inc., a consulting firm owned and operated by D'Andrea that was retained by GTECH.[1]

On January 15, 1997, before the parties had filed their post-trial motions and before the Probation Office had prepared the presentence investigation reports for either Smith or D'Andrea, the government submitted its sentencing memorandum to the district court.[2] Simultaneously, the government placed the memo on its Internet website and made copies available to the public, the media, and to state lottery regulators. To support the government's position that Smith and D'Andrea should receive substantial sentences, the section of the memorandum concerning relevant conduct included descriptions of criminal conduct involving several uncharged individuals. The dissemination of the memorandum was immediately followed by a series of newspaper articles reporting the substance of the memorandum, and in particular, the allegations against the uncharged individuals.

On January 16, 1997, the day after the sentencing memorandum was publicly disclosed, counsel for GTECH and the uncharged individuals named in the sentencing memorandum made an oral request before the district court to be heard about the disclosure. The court held a hearing the next day. GTECH and the uncharged individuals contended that the sentencing memorandum

_____

1. A third defendant, Joseph La Porta, was co-owner and operator of Benchmark. He was acquitted of the charges stemming from the kickback scheme.

2. It is not altogether clear whether the sentencing memorandum was actually filed with the district court like any other brief or whether it was simply forwarded directly to Judge Politan's chambers. The reason for the premature submission of the government's sentencing memorandum is also unclear. It appears that post-trial motions were delayed because Smith sought new counsel. As a result, the sentencing, originally scheduled for January 8, was postponed. When the sentencing memorandum was submitted to the court, the Probation Office had not yet conducted its interviews of Smith or D'Andrea.

7

contained grand jury material and that, as such, the government had violated Fed. R. Crim. P. 6(e) by disclosing it to members of the public. These third parties were joined by Smith and D'Andrea in also claiming that thefiling of the sentencing memorandum violated various aspects of Fed. R. Crim. P. 32, which governs the preparation of presentence investigation reports.3 The government contended in opposition that its disclosure of the sentencing memorandum was proper in all respects.

At the conclusion of the hearing, "to preserve the status quo" pending full briefing on the issues before it, the district court ordered the sentencing memorandum removed from the clerk's office and placed under seal. The court also directed the government to remove the memo from its website, to make all reasonable efforts to retrieve copies of the document that had been disseminated, and to refrain from further dissemination of the memo. The court ordered the parties to file any further papers under seal, but expressly reserved decision on whether it would close any future hearing. It informed the parties that it would determine, based on the parties' papers, "whether there is sufficient implication of Rule 6(e) . . . to warrant closure."

On January 31, 1997, GTECH and the uncharged individuals filed under seal briefs alleging that the government's disclosure of the sentencing memorandum violated Fed. R. Crim. P. 6(e) and 32. The government filed its opposition brief under seal on February 14, and the movants filed their sealed reply papers on February 24.

On February 14, 1997, the newspapers moved to intervene and for access to the sentencing memorandum,

---

3. The parties argued, in addition, that the disclosure of the sentencing memorandum prior to the Probation Office's submission of the presentence report violated a standing order of the district court governing the sentencing process. This standing order contemplates that the probation officer will submit the final presentence investigation report to the court and the parties "not less than 7 business days prior to the date of the sentencing hearing." The government is to submit the sentencing memorandum "not less than 5 business days prior to the date of the sentencing hearing." In re Guideline Sentencing, Standing Order (Sept. 1, 1994).

the briefs filed under seal, and any hearing, contending that they had First Amendment and common law rights of access to all of them.4 GTECH and the other parties opposed the newspapers' request for access to the papers and proceedings. At a hearing on the newspapers' motion on March 24, the district court granted the newspapers' motion to intervene, but denied their request for access to the sentencing memorandum, the briefs, and to the hearing (which it scheduled for April 28). The court informed the newspapers that "the very reason [the briefs are] sealed is there may be materials in there which affect Rule 6(e)." Moreover, the court stated:

I'm in the process of considering the briefs at the present time. I think it would be fundamentally unfair and a disservice to the system of justice and to this Court for me to precipitously let them go without having heard the arguments of the parties in a free and unfettered context so that I can decide matters of sensitivity under Rule 6.

The court noted that "at the conclusion of [the Rule 6(e)] hearing or shortly thereafter" it would disclose all of the materials that it determined did not contain grand jury secrets. The court filed an order to this effect on April 1.

On April 3, 1997, the newspapers filed a notice of appeal from the district court's orders of January 17 and April 1 which had sealed the sentencing memorandum, the briefs, and the April 28 hearing. On April 24, 1997, we stayed the April 28 hearing. We have appellate jurisdiction under 28 U.S.C. § 1291 to review final decisions of the district court.5 Orders either granting or, as in this case, denying access to court proceedings or records are appealable as final orders

─────────────────────────────────────────────

4. At the district court level, the government did not oppose the newspapers' request for access to the papers and hearing, contending that it had done nothing improper by publicly disclosing the sentencing memorandum. On appeal, however, the government submits that the papers and hearing must remain sealed temporarily so that the district court can determine in a deliberative fashion whether the disclosure of the sentencing memorandum was improper.

5. The district court had jurisdiction over the underlying criminal prosecutions under 18 U.S.C. § 3231.

9

under § 1291. See, e.g., United States v. Antar, 38 F.3d 1348, 1355 (3d Cir. 1994); United States v. Raffoul, 826 F.2d 218, 222 (3d Cir. 1987).6 We lack jurisdiction, however, over the part of the newspapers' appeal that concerns access to the sentencing memorandum because it is moot. The newspapers already possess the sentencing memorandum, and the district court's orders do not bar them from publishing it. Under these circumstances, no meaningful relief can be granted to the newspapers with respect to the sentencing memorandum, and there is no live controversy between the parties.7

Thus, we consider (only) whether the district court has properly sealed the briefs and the hearing. To the extent that those briefs and the hearing concern the disclosure of the sentencing memorandum, our resolution of whether there is a public right of access to them will necessarily impact on the question whether the district court also properly sealed the sentencing memorandum.

We exercise plenary review over whether the First Amendment or the common law creates a presumptive right of access to judicial documents or proceedings. Antar, 38 F.3d at 1356–57. Although we generally review the factual findings of the district court for clear error, in the First Amendment context, we exercise independent appellate review of the record. See Swineford v. Snyder County, 15 F.3d 1258, 1265 (3d Cir. 1994); United States v. Simone, 14 F.3d 833, 836 (3d Cir. 1994). Thus, when we deal with a First Amendment right of access claim, our scope of review

_____

6. GTECH contends that the newspapers' appeal is not timely because their notice of appeal was filed more than sixty days after the district court's January 17 order sealing the sentencing memo, the briefs, and any future hearings. We disagree. First, the district court did not order the hearing closed until its April 1 order. Second, and more importantly, the newspapers were not parties to this action until April 1 when the district court granted their motion to intervene. This issue was not ripe for appeal until that same day, when the district court rejected the newspapers' challenge to the January 17 order.

7. In holding that the newspapers' request for public access to the sentencing memorandum is moot, we do not hold that the dispute before the district court as to whether the government properly disclosed the sentencing memorandum is also moot.

10

of factual findings "is substantially broader than that for abuse of discretion." Antar, 38 F.3d at 1357. With respect to the newspapers' common law right of access to judicial proceedings and papers, we review the district court's order for abuse of discretion. In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 92 (3d Cir. 1990).

II. First Amendment Right of Access to Proceedings and Records

The First Amendment right of access to criminal proceedings is firmly established. In Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980), the Supreme Court held that the First Amendment provides a public right of access to criminal trials. Tracing the history of open criminal trials from the days before the Norman Conquest, the Court found that criminal trials are covered by a "presumption of openness," and, as such, may be closed only if justified by an "overriding interest articulated in findings." Id. at 573, 581. The Court has since extended that holding to other aspects of a criminal case, see, e.g., Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) ("Press-Enterprise I") (voir dire); Press-Enterprise Co v. Superior Court, 478 U.S. 1 (1986) ("Press-Enterprise II") (preliminary hearing), and we have done the same, affording a public right of access to additional aspects of criminal proceedings, see, e.g., Simone, 14 F.3d at 840 (post-trial hearings to investigate juror misconduct), and to the records and briefs that are associated with those proceedings, see, e.g., Antar, 38 F.3d at 1359-60 (voir dire transcript); United States v. Smith, 787 F.2d 111, 116 (3d Cir. 1986) ("Smith II") (transcript of sidebar conference during criminal trial).

The Supreme Court has established a two-part inquiry for determining whether a particular proceeding is one to which the First Amendment right of access attaches. This test requires a court to consider both "experience" and "logic." Press Enterprise II, 478 U.S. at 8. The "experience" prong requires us to consider "whether the place and process have historically been open to the press and the general public." Id. The "logic" inquiry asks us to determine

11

whether "public access plays a significant positive role in the functioning of the particular process in question." Id. We have identified six relevant societal interests that a court may consider in evaluating whether, for purposes of the "logic" prong, public access to the proceeding and records in question enhances their function:

promotion of informed discussion of governmental affairs by providing the public with the more complete understanding of the judicial system; promotion of the public perception of fairness which can be achieved only by permitting full public view of the proceedings; providing a significant community therapeutic value as an outlet for community concern, hostility, and emotion; serving as a check on corrupt practices by exposing the judicial process to public scrutiny; enhancement of the performance of all involved; and discouragement of perjury.

Smith II, 787 F.2d at 114 (summarizing United States v. Criden, 675 F.2d 550, 556 (3d Cir. 1982) (Criden II)).

Once established under the "experience" and "logic" test, a First Amendment right of access is not an absolute right, but rather is a presumptive right. Although rare, closure of a criminal proceeding or records to which there is a presumptive right of access is permitted "for cause shown that outweighs the value of openness." Press-Enterprise I, 464 U.S. at 509. We have held that, for a district court to seal a criminal proceeding or records, "particularized findings must be made on the record in each case, (1) establishing the existence of a compelling governmental interest, and (2) demonstrating that absent limited restrictions upon the right of access, that other interest would be substantially impaired." Antar, 38 F.3d at 1359.

Based on this case law, the newspapers contend that there is a presumptive First Amendment right of access to the sealed briefs and the upcoming hearing. They point first to our language in Simone, in which we noted that "[o]n a broad level, we see no reason to suspect that post-trial proceedings as a general category are any different with respect to the First Amendment right of access than the other components of a criminal trial." Simone, 14 F.3d at

12

839. Turning to the Press-Enterprise II test, the newspapers submit that the Criden II factors weigh in favor of access to the papers and proceedings at issue.8 According to the newspapers, the ultimate issue before the district court is whether the government's disclosure of the sentencing memorandum was proper. Therefore, they submit, the papers and the hearing ultimately concern allegations of government misconduct. Viewing the proceedings and related briefing through this lens, the newspapers claim that access to those proceedings and papers will promote the public's perception of fairness; foster an informed public discussion about the operations of the United States Attorney's office; and provide public insight into how the judiciary resolves serious allegations of government misconduct.

The newspapers also point out that the district court did not make any particularized findings that closure of the briefs and hearing was necessary to further some compelling interest, as is required under Antar once a court determines that a presumptive right of access exists. Alternatively, they contend that, even if the district court had made particularized findings, there is no compelling interest that would justify the closure of the briefs and the hearing.

In response, GTECH and the other parties opposing access (Smith, D'Andrea, and the government) contend that there is no presumptive right of access to the briefs or the hearing.9 They submit that the real issue before the district court is whether the government improperly disclosed grand jury material in violation of Fed. R. Crim P. 6(e). Relying on Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211 (1979), and subsections (e)(5) and (e)(6) of Rule 6, they point out that grand jury matters, and papers and proceedings that would disclose grand jury matters have historically been closed to the press and the public. They represent that the briefs and the hearings would reveal not only secret grand jury material that was disclosed by the

---

8. The newspapers' brief does not address the "experience" prong.

9. The uncharged individuals named in the sentencing memorandum have not filed briefs on appeal.

government in the sentencing memorandum, but also previously undisclosed (secret) grand jury material that they have brought (or will bring) to the court's attention so that it can make a fully informed decision as to whether the government violated Rule 6(e). The Assistant United States Attorney in particular stated at oral argument: "[N]ot only does [Judge Politan] have to [look at undisclosed grand jury

material] but the government's position is that he can't make a decision without it."10

III. Do the Newspapers Have a Right of Access to the Briefs and Hearing?

A. The Secrecy of the Grand Jury

The longstanding rules preserving grand jury secrecy are well established. See Douglas Oil, 441 U.S. 211; In re Grand Jury Matter (Catania), 682 F.2d 61, 63 (3d Cir. 1982). As the Supreme Court explained in Douglas Oil, "[s]ince the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye." 441 U.S. at 218 n.9. The secrecy of grand jury proceedings is a necessary incident to the proper functioning of the grand jury system. The Court has:

noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but

_____

10. The government attached a sealed affidavit to this effect in the papers it filed in the district court.

14

exonerated by the grand jury will not be held up to public ridicule.

Id. at 218-19. Moreover, these "interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." Id. at 222.11

Thus, Douglas Oil implicitly makes clear that grand jury proceedings are not subject to a First Amendment right of access under the test of "experience and logic." Historically, such proceedings have been closed to the public. Moreover, public access to grand jury proceedings would hinder, rather than further, the efficient functioning of the proceedings.

Not only are grand jury proceedings not subject to any First Amendment right of access, but third parties can gain access to grand jury matters only under limited circumstances. Even after the grand jury has concluded its proceedings, a private party petitioning for access to grand jury materials must show that "the need for [access] outweighs the public interest in secrecy, and . . . the burden of demonstrating this balance rests upon the private party seeking disclosure." Id. at 223.

Fed. R. Crim. P. 6(e) is intended to preserve the tradition of grand jury secrecy, creating a general rule of confidentiality for all "matters occurring before the grand jury." Rule 6(e) applies to "anything which may reveal what occurred before the grand jury." Catania, 682 F.2d at 63. The core of this rule is an obligation on all persons who are present at grand jury proceedings not to disclose any matters disclosed at such proceedings.12 Any "knowing

_____

11. In this regard, we note that it is not clear from the record whether the grand jury proceedings that are potentially implicated are ongoing. Because even completed grand jury proceedings and records are presumptively secret, determining whether the grand jury here has completed its investigation is not necessary to the questions before us.

12. Rule 6(d) sets out who may be present at grand jury proceedings:

Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

15

violation" of that obligation may be punished as contempt of court. Fed. R. Crim. P. 6(e)(2).

Rule 6(e) provides only narrow exceptions to the general rule of grand jury secrecy. For example, under Rule 6(e)(3)(A), grand jury secrets may be disclosed without a court order to certain government personnel for purposes limited to the federal criminal law enforcement. If such a disclosure is made, "[a]n attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure was made, and shall certify that the attorney has advised such persons of their obligation of secrecy under this rule." Id. 6(e)(3)(B). Most important for purposes of this case, any third parties seeking access to grand jury materials must file a petition in the district court where the grand jury convened. Id. 6(e)(3)(D). Under Douglas Oil, as we noted above, such parties have the burden of showing that their need for access outweighs the public interest in the secrecy of the grand jury materials.

To preserve the secrecy of grand jury proceedings, the district court must seal certain hearings and records, although not grand jury proceedings themselves, when access to those hearings and records would jeopardize grand jury secrecy. Under Rule 6(e)(5), "[s]ubject to any right to an open hearing in contempt proceedings, the court shall order a hearing on matters affecting a grand jury proceeding to be closed to the extent necessary to prevent disclosure of matters occurring before a grand jury" (emphasis added).13 Similarly, under Rule 6(e)(6), "[r]ecords, orders and subpoenas relating to grand jury proceedings shall be kept under seal to the extent and for such time as

_____

13. To the extent that contempt proceedings may be held in open court, the right to public access is a right held by the putative contemnor, not by the public. The contemnor must request open proceedings. Moreover, there is no requirement that the entire proceeding, including the questions that the contemnor refused to answer, be made public. All that must be accessible to the public, upon the contemnor's request, is the "final stage" of contempt proceedings. Levine v. United States, 362 U.S. 610, 618 (1960).

is necessary to prevent disclosure of matters occurring before a grand jury" (emphasis added).

It is clear to us that the briefs and the hearings here are not themselves "matters occurring before the grand jury." They may, nonetheless, be subject to Rule 6(e)(5) and 6(e)(6) governing the closure of hearings "affecting" and papers "relating to" grand jury proceedings. As the Second Circuit has recently explained, "[t]he plain language of the Rule shows that Congress intended for its confidentiality provisions to cover matters beyond those actually occurring before the grand jury." In re Grand Jury Subpoena (Doe No. 4 v. Doe No. 1), 103 F.3d 234, 237 (2d Cir. 1996). Rather than according secrecy only to the grand jury proceedings themselves, the rules provide a presumption of secrecy to all proceedings that "affect" grand jury proceedings. Concomitantly, not only are grand jury materials themselves to be kept secret, but so are all materials that "relate to" grand jury proceedings.

The newspapers urge a narrow reading of those provisions, recognizing that, if the briefs and hearing are subject to Rules 6(e)(5) and 6(e)(6), there is clearly no First Amendment right of access to them. Not only would there be no presumptive right of access to them, but if the newspapers wanted access to the briefs and the hearing, they would have the burden of showing that their need for access outweighed the public interest in grand jury secrecy, a burden the newspapers would be unlikely to carry. The newspapers contend that proceedings regarding whether the government improperly disclosed grand jury material do not "affect" or "relate to" a grand jury proceeding, in the common sense of those terms. According to the newspapers, any grand jury proceedings can continue "uninterrupted and unaffected" by the proceedings before the district court. We disagree.

Grand jury proceedings are interrupted and affected if matters occurring before the grand jury are disclosed. That is because, as the Douglas Oil Court explained, the disclosure of what has occurred or is occurring before the grand jury undermines the proper functioning of grand jury proceedings. Thus, Rules 6(e)(5) and Rule 6(e)(6) require a district court to seal any hearing or records that would

17

publicly disclose matters occurring before the grand jury. See id. at 238 ("[A] proceeding is related to or affects a grand jury investigation if it would reveal matters actually or potentially occurring before the grand jury."); 1 Charles Alan Wright, Federal Practice and Procedure § 106, at 250 (1982) ("The rule of secrecy applies . . . to anything that might tend to reveal what happened in the grand jury room."). In other words, since it is indisputable that a court must seal Rule 6(e) material, then a court may also seal proceedings or papers if grand jury material would be disclosed during the proceedings.

The Advisory Committee notes to Rule 6 clearly support this conclusion. That commentary states that Rule 6(e)(5) "make[s] it clear that certain hearings which would reveal matters which have previously occurred before a grand jury or are likely to occur before a grand jury with respect to a pending or ongoing investigation must be conducted in camera in whole or in part in order to prevent public disclosure of such secret information." Advisory Committee Notes to Rule 6, 1983 Amendment. The Notes then go on to provide several examples of such a hearing. For instance, when a third party petitions a court for access to particular grand jury materials under subdivision (e)(3)(D), a court might be justified in sealing any related hearings "for it will at least sometimes be necessary to consider and assess some of the `matters occurring before the grand jury' in order to decide the disclosure issue." Id. In other words, a court should close a hearing to decide whether disclosure is warranted if that hearing would necessarily disclose grand jury matters.14

B. The Relationship Between the Rules Protecting Grand Jury Secrecy and the Briefs and Hearing

We turn, therefore, to the critical question whether the briefs and hearing to which the newspapers seek access are

_____

14. The commentary provides two additional examples of hearings "at which information about a particular grand jury proceeding might need to be discussed": "those at which the question is whether to grant a grand jury witness immunity or whether to order a grand jury witness to comply fully with the terms of a subpoena directed to him."

18

subject to a First Amendment right of access. We acknowledge at the outset the force of the newspapers' contention that the proceedings before the district court in essence concern post-trial allegations of government misconduct in a criminal case. Moreover, we agree with the newspapers that there is a significant public interest in gaining access to proceedings that investigate allegations of government misconduct. Nevertheless, even if the proceedings at issue concern possible government misconduct (so that the logic prong of the Press-Enterprise II test, see supra p.11-13, is likely satisfied), there is no presumptive First Amendment right of access if the hearing, and related papers must be sealed under Rule 6(e)(5) and 6(e)(6) because they "affect" or "relate to" a grand jury proceeding. In other words, if the district court seals a proceeding or brief because it would disclose grand jury matters, there is no First Amendment right of access to it even if it also concerns possible improper actions by government officials.

Thus, to determine whether the newspapers are correct that there is a presumptive right of access to the hearing and briefs, we must determine whether they will disclose grand jury matters so that they "affect" or "relate to" grand jury proceedings within the meaning of Rule 6(e)(5) and 6(e)(6). We conclude that they do. Although the ultimate issue to be decided by the district court is whether attorneys for the government committed any wrongdoing by publicly releasing the sentencing memorandum, this question cannot be resolved without the district court's determining whether that sentencing memorandum includes Rule 6(e) material. Thus, the focus of the proceedings before the district court is on the question whether the disputed material contained in the sentencing memorandum is in fact grand jury material. In this proceeding, grand jury matters may potentially be disclosed in two respects.

First, as the government has represented in its brief and at oral argument, in order to decide the matter, the district court will have to consider previously undisclosed material that, the government represents, contains grand jury secrets. According to the parties opposing access, these

19

previously undisclosed materials have been submitted to the district court so that it can determine in an informed manner whether the sentencing memorandum contained Rule 6(e) material. At this juncture, since the government is in the unique position of knowing what transpired before the grand jury, we must accept the representation that undisclosed grand jury secrets will come out during the proceeding.

Second, the aspects of the sentencing memorandum itself that GTECH, Smith, and D'Andrea contend are entitled to secrecy under Rule 6(e) will necessarily be disclosed during the proceedings, as the purpose of the proceedings is to determine the status of that material under Rule 6(e). The district court must ensure that any such material remains secret, for, otherwise, potentially confidential material would be publicly disseminated before the court can decide whether those materials are actually secret. The risk that the briefs and hearing will disclose grand jury matters is significant enough that closure is warranted. Cf. Doe No. 4, 103 F.3d at 238 ("We believe that a hearing on Doe 4's motion [asserting that it had been a victim of illegal surveillance and demanding that the government disclose any such surveillance] poses a significant risk of disclosing information which has occurred or which may occur before the grand jury. Because the government has not yet confirmed or denied the investigation, we can only speculate as to the precise nature of the risk.").

As the foregoing discussion demonstrates, the briefs and hearing will necessarily reveal grand jury material. We therefore conclude that the briefs and hearing to which the newspapers seek access are afforded secrecy under Fed. R. Crim. P. 6(e)(5) and 6(e)(6). Not only was the district court justified in sealing them, it was required to do so absent a showing of an overriding interest. As such, there is no presumptive First Amendment right of access thereto. For this reason, our inquiry ends here, and we do not reach the question whether the district court made particularized findings that the need for closure outweighed the interest in public access, as is required under Antar, 38 F.3d at 1359, when a presumptive First Amendment right of access is established.

20

Several additional considerations support our conclusion that there is no presumptive First Amendment right of access to the briefs or to the hearing. GTECH and the other parties opposing access point out, quite convincingly, that examining material in camera is a common method used by courts to make decisions without undermining the secret or privileged nature of certain material. We have approved that method in several contexts, including the grand jury. Recently, in In re Grand Jury, 103 F.3d 1140 (3d Cir. 1997), for example, we held that the district court did not err in conducting an ex parte, in camera hearing to determine whether a challenged subpoena must be complied within a case claiming parent-child privilege. We stated that "[e]x parte in camera hearings have been held proper in order to preserve the ongoing interest in grand jury secrecy. The secrecy of the grand jury proceedings in the present matter might have been compromised by divulging the specific questions that the government intended to ask during the daughter's testimony." Id. at 1145 (citations omitted).

Courts have also approved of examining material in camera in order to preserve the potentially privileged or secret nature of that information when faced with a dispute about whether that material is in fact privileged or secret, as in this case. For example, we have used that method to determine whether certain documents are protected by the attorney-client privilege or work product doctrine. See, e.g., Kelly v. Ford Motor Co., 107 F.3d 954 (3d Cir. 1997). Similarly, the Supreme Court has endorsed the practice of holding in camera proceedings for determining whether the government can withhold documents from discovery based on a claimed government privilege. See, e.g., Kerr v. United States District Court of the Northern District of California, 426 U.S. 394 (1976).

In a related vein, it is clear that the district court properly took steps to preserve the subject matter of the dispute pending its determination whether that subject matter should be secret. Faced with a bona fide claim that 6(e) material was disclosed in the sentencing memorandum, the court prevented further disclosures of that material, thereby preserving the "status quo," while the parties

21

briefed the question and the court brought them in for a hearing. The district court would have been in an untenable position if the newspapers had a right of access to the proceedings. The very purpose of the proceedings is to determine whether the sentencing memorandum contained Rule 6(e) material. If the district court made that determination in a public proceeding, it would further disseminate the potential secrets in doing so. This would be an unfortunate result indeed if the district court ultimately determined that the memorandum in fact contained grand jury secrets.15

---

15. Because we conclude that the district court did not err in sealing the briefs and the hearing, we need not reach the question whether Fed. R. Crim. P. 32, which governs the preparation of presentence investigation reports (PSR), would have permitted the district court to do the same. The district court, in sealing the briefs and hearing, relied almost entirely on Rule 6(e). Although most of the arguments with respect to Rule 32 made by the parties opposing access have to do with the question whether the district court properly sealed the sentencing memorandum, which we have held is moot, whether information contained in a government sentencing memorandum is confidential is still a live issue to the extent that the briefs and the hearing might reveal some of that information.

The parties opposing access to the briefs and hearing make a number of Rule 32 based arguments in support of the district court's decision to seal the briefs and the hearing. First, they contend that the sentencing memorandum (and by extension, the briefs and the hearing) disclosed (or will disclose) certain sensitive information that Rule 32(b)(5) requires probation officers to exclude from the PSRs. Second, they submit that the sentencing memorandum (and again by extension, the briefs and ultimately the hearing) disclosed (or will disclose) presentence investigation material in violation of Rule 32(b)(6), which governs the obligations of the parties during the presentence investigation process.

More generally, the parties opposing access point to case law that has held that PSRs are not subject to any public right of access, unless the party seeking access can demonstrate an interest in disclosure that outweighs the interest in the confidentiality of the report. See United States v. Corbitt, 879 F.2d 224, 228 (7th Cir. 1989); United States v. Schlette, 842 F.2d 1574, 1579 (9th Cir. 1988); United States v. McKnight, 771 F.2d 388, 390 (8th Cir. 1985); United States v. Santarelli, 729 F.2d 1388, 1390 (11th Cir. 1984); United States v. Charmer Indus., 711 F.2d 1164, 1176 (2d Cir. 1983). Even though Rule 32 itself does not deal with

22

C. Must the District Court Redact the Briefs
and Hold a Two-Part Hearing?

The newspapers concede that they have no right of
access to grand jury material as such. They contend,
however, that the district court would only be justified in
sealing the briefs and the hearing in their entirety if the
court made particularized findings that the hearing and
briefs would concern only grand jury material. In other
words, the newspapers insist that they seek access only to

_____

disclosure of the report to third parties, a number of courts have
reasoned that, in addition to the fact that PSRs have traditionally been
confidential and only made available to the defendant in recent decades,
"public disclosure . . . of the presentence report . . . would constitute a
positive hindrance" of the sentencing process and ongoing criminal
investigations. Corbitt, 879 F.2d at 229. We ourselves have observed that
"[t]here is a general presumption that the courts will not grant third
parties access to the presentence reports of other individuals." United
States v. Blanco, 884 F.2d 1577, 1578 (3d Cir. 1988).

Based on this case law, the parties opposing access contend that the
newspapers do not have a presumptive right of access to the sentencing
memorandum, or to the briefs or hearing, which might disclose the
information contained in the PSR. As they point out, sentencing
memoranda typically include the same classes of sensitive information as
are included in presentence reports, such as criminal history and
characteristics, and not infrequently, as in this case, allegations of
criminal conduct against uncharged individuals.

There is considerable force to this argument. There are, of course,
countervailing considerations. In the wake of the revolution in criminal
sentencing spawned by the Sentencing Reform Act, 18 U.S.C. § 3551 et
seq., and the U.S. Sentencing Guidelines, which have largely
transformed sentencing into an adversary proceeding during which the
sentencing judge makes record fact findings about the material
sentencing factors, it would seem that significant portions of the PSR
need (and should) no longer be confidential. But even if that were so, the
matters at issue here may well be outside the ambit of any such precept
(assuming it should be adopted). We leave this question to the district
court. If the court determines, upon resolving the 6(e) question, that all,
or aspects, of the briefs and the transcripts of the hearing should be
disclosed to the public, it should also consider whether Rule 32 or
related case law establishing the confidentiality of PSRs would prohibit
the disclosure of that material.

23

the nonsecret portions of the proceeding before the district court. They make two related contentions. First, they point out that the district court made no findings that secret grand jury material would actually be considered during the proceedings. Second, they point out that both Rule 6(e)(5) and 6(e)(6) specifically provide that the hearing and materials can be closed only "to the extent necessary to prevent disclosure of matters occurring before a grand jury." According to the newspapers, even if the district court can justifiably seal part of the briefs and the hearing, the court must exercise this authority narrowly, and only seal the particular aspects of the briefs and the hearing that warrant secrecy. Under these circumstances, the newspapers contend, the district court erred in sealing the briefs and the hearing in their entirety and should, instead, have redacted the briefs and held a two-part hearing.

We disagree. The government has represented that material it concedes to contain grand jury secrets will be disclosed in order to aid the district court's deliberations. That virtually concludes the issue. But we would have to reject the newspapers' contention even without this representation. The briefs and the hearing to which the newspapers seek access concern the exact issue that the newspapers want the district court to determine now: whether 6(e) material is implicated. More specifically, although the newspapers seek access only to the aspects of the proceedings that the district court determines to be nonsecret, the district court simply cannot determine what material is secret and what can be disclosed to the public without determining whether the sentencing memorandum contains Rule 6(e) material. Yet that decision, in turn, cannot be made without the benefit of the briefs and in particular, without the benefit of oral argument.

At such a hearing, according to the parties opposing access, the parties will make legal arguments about the scope of Rule 6(e), as well as explain the fabric of the grand jury proceedings at issue to the district court. It is not until the district court determines what constitutes grand jury material in the context of this case, which it can do only at the conclusion of the proceedings before it, that it will know what aspects of the briefs, the hearing, and the sentencing memorandum to make public, if any.

24

The newspapers have expressed concern that a district court would seal proceedings that should otherwise be open based on a mere allegation that grand jury secrets have been or will be disclosed. They submit that this is of particular concern in a case such as this where the parties claiming that a 6(e) violation has occurred were not present during the grand jury investigation, and, therefore, have no basis for knowing what exactly constitutes 6(e) material in this particular case. We conclude, however, that GTECH and the other parties have made at least a colorable showing that 6(e) materials were implicated, and as noted above, the U.S. Attorney was particularly forthcoming. Moreover, the district court made adequate findings in this regard. It stated that "the very reason [the briefs are] sealed is there may be materials in there which affect Rule 6(e)."

Even if it were possible for the district court to identify material that potentially implicates Rule 6(e) in advance and to restrict access only to that particular material without the benefit of oral argument, we would not require the district court to do so. The newspapers would, in essence, have the district court conduct a "revolving door" hearing to which the media would be let in and then excluded from time to time (or minute to minute) depending on whether grand jury material (or putative grand jury material) was under consideration. But courts cannot conduct their business that way, and we will not tie the hands of the district court in this fashion.

Under these circumstances, requiring access to some aspects of the hearing will be cumbersome, impractical, and inefficient. The same would be true of requiring the district court to redact the briefs. The district court has informed the parties that it will disclose all nonsecret aspects of the sentencing memorandum, the briefs, and the hearing as soon as it determines which aspects of those papers and proceedings are secret. Under the circumstances we have described, that access is enough to satisfy any right of access that the newspapers may have to the nonsecret aspects of the proceedings.

25

D. Is the Previously Disclosed Grand Jury Material
Here Entitled to Any Protection?

The newspapers also contend that there is a First Amendment right of access to the briefs and the hearing in this case because the First Amendment guarantees access to grand jury or other confidential matters to the extent that that information has already been publicly disclosed. They hang their hat on the fact that the sentencing memorandum has already been disclosed to the public, and reason that what the parties opposing access seek to protect is no longer secret. We reject this argument.

As we have already noted, the proceedings before the district court will involve the consideration of previously undisclosed grand jury material. Therefore, even if we were to assume that any confidential material contained in the sentencing memorandum is no longer entitled to protection, the proceedings, if public, will, for the reasons we have described, disclose additional confidential material. Since we have held that the district court is not required to conduct a revolving door hearing, in which it would seal only those portions of the proceedings that might reveal grand jury secrets, the district court did not err in sealing the briefs and the hearing even if the information contained in the sentencing memorandum is no longer entitled to protection.

Moreover, we cannot agree with the newspapers' contention that grand jury material or putative grand jury material, once disclosed, even if inadvertently, is no longer subject to the protections of Rule 6(e). At bottom, it is clear to us that a court is simply not powerless, in the face of an unlawful disclosure of grand jury secrets, to prevent all further disclosures by the government of those same jury secrets. In other words, even if grand jury secrets are publicly disclosed, they may still be entitled to at least some protection from disclosure.

The Supreme Court's decision in United States v. Sells Engineering, Inc., 463 U.S. 418 (1983), is instructive on this point. In that case, lawyers in the Justice Department's Civil Division had access to certain grand jury materials for two years before the Ninth Circuit held that those lawyers

were not entitled to the materials under Rule 6(e)(3)(A)(i), which governs disclosure to other government lawyers. The Supreme Court noted that the case was not moot, despite government protestations to the contrary: " `The controversy here is still a live one. . . . Each day this order remains effective the veil of secrecy is lifted higher by disclosure to additional personnel and by the continued access of those to whom the materials have already been disclosed. We cannot restore the secrecy that has already been lost but we can grant partial relief by preventing further disclosure.' " Id. at 423 n.6 (quoting In re Grand Jury Investigation No. 78-184 (Sells, Inc.), 642 F.2d 1184, 1187-88 (9th Cir. 1981)); see also In the Matter of Special March 1981 Grand Jury, 753 F.2d 575, 577 (7th Cir. 1985) ("If the Court orders such disclosure erroneously, we suppose both that an injured person can complain by filing . . . a petition with the court that ordered disclosure and that the court has inherent power to issue an appropriate curative order . . . . We do not think Congress meant to leave the courts powerless to correct such errors." (citations omitted)); United States v. Nix, 21 F.3d 347, 350 (9th Cir. 1994) ("We faced a somewhat similar situation in [Sells Engineering]. . . . We acknowledged that secrecy could not be restored, but held that the appeal was not moot because issues relating to future disclosure needed to be addressed.").16

_____

16. The cases relied on by the newspapers on this point are inapposite. First, they cite us to In re Charlotte Observer, 882 F.2d 850 (4th Cir. 1989) ("Charlotte Observer I"), in which the Fourth Circuit reversed an order of the district court sealing proceedings relating to a change of venue motion in a well-publicized criminal case. The district court concluded that closure was necessary in order to prevent "republication" of the prejudicial pre-trial publicity. The Fourth Circuit disagreed, stating "[w]here closure is wholly inefficacious to prevent a perceived harm, that alone suffices to make it constitutionally impermissible." Id. at 855. Unlike the case before us, however, Charlotte Observer I involved only the republication of matters of public record. As such, the court found there was a presumptive right of access to the proceedings, and the only issue before it was whether the defendants' interest in closure was sufficient.

Moreover, in In re Charlotte Observer, 921 F.2d 47 (4th Cir. 1990) ("Charlotte Observer II"), the same court reversed an order of the district

27

We acknowledge that the circumstances of this case are different from those before the Supreme Court in <u>Sells Engineering</u> because the potential grand jury secrets disclosed here were disseminated to members of the public, rather than to certain, identifiable government lawyers and their staffs. The order entered by the district court in this case cannot effectively bar further dissemination of any potential grand jury secrets by members of the public who possess the sentencing memorandum.17 Nevertheless, this difference in the degree of disclosure does not change the result in this case. Although the district court could not prevent the newspapers from publishing the sentencing memorandum once they came into possession of it, the court properly prevented further government disclosures of the putative grand jury secrets contained in the sentencing memorandum to additional parties. Even if the dissemination by members of the public continues, the

_____

court enjoining two reporters from publishing confidential information that was inadvertently revealed in open court. The court noted that "[o]n the present record . . . `the cat is out of the bag.' The district court did not close the hearing and the disclosure was made in the courtroom, a particularly public forum. Once announced to the world, the information lost its secret characteristic, an aspect that could not be restored by the issuance of an injunction to two reporters." <u>Id.</u> at 50. Unlike <u>Charlotte Observer I</u>, <u>Charlotte Observer II</u> did potentially implicate secret grand jury material. The information that was inadvertently disclosed was the name of a lawyer who was the target of an ongoing grand jury investigation. Despite the court's language, however, its holding was based in the law of prior restraint: the district court's order barred the reporters from publishing information that they had obtained lawfully. The order, therefore, clearly ran afoul of the line of Supreme Court prior restraint cases, such as <u>Oklahoma Publishing Co. v. District Court</u>, 430 U.S. 308 (1977), and <u>Nebraska Press Association v. Stuart</u>, 427 U.S. 539 (1976). In the case before us, in contrast, the district court's order does not bar the newspapers from publishing the sentencing memorandum in their possession.

17. Nor could the court enter an order barring parties in possession of the sentencing memorandum from passing the memorandum onto other parties. Under prior restraint law, orders prohibiting the media from publishing information already in its possession are strongly disfavored. <u>See, e.g.,</u> <u>Oklahoma Publishing Co. v. District Court</u>, 430 U.S. 308 (1977); <u>Nebraska Press Association v. Stuart</u>, 427 U.S. 539 (1976).

order barring further disclosure of any secret grand jury material will at least narrow that dissemination.

IV. Common Law Right of Access

The newspapers also contend that they have a presumptive common law right of access to the briefs and to the hearing. This court has often acknowledged the existence of a common law right " `to inspect and copy public records and documents, including judicial records and documents.' " United States v. Criden, 648 F.2d 814, 819 (3d Cir. 1981) (quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978)). Although the right of access traditionally attached only to judicial records, we have suggested that the common law right of access also applies to judicial proceedings. See Bank of America Nat'l Trust & Savings Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 343 (3d Cir. 1986). As we have explained, the common law right of access serves a number of important functions:

The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system . . . . As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

Leucadia v. Applied Extrusion Tech., 998 F.2d 157, 161 (3d Cir. 1993) (quoting Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 660 (3d Cir. 1991)).

For the reasons we have already explained, there is no common law right of access to grand jury materials. Unlike judicial records to which a presumption of access attaches when filed with a court, grand jury materials have historically been inaccessible to the press and the general public, and are therefore not judicial records in the same sense. See, e.g., Westinghouse, 949 F.2d at 660-62 (papers filed in connection with a motion for summary judgment);

29

Littlejohn v. BIC Corp., 851 F.2d 673, 678–80 (3d Cir. 1988) (trial transcripts and exhibits admitted at trial); Bank of America, 800 F.2d at 343–46 (settlement documents). Therefore, the newspapers have not established a common law right of access to the briefs or the hearing.

V. Conclusion

For the foregoing reasons, the order of the district court denying the newspapers' motion for access to the sentencing memorandum, the briefs filed under seal, and the hearing initially scheduled for April 28 (which may now go forward) will be affirmed.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit